**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 08, 2011.**



_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | **CHAPTER 11 CASE** |
| | § | |
| **JCE DELAWARE, INC., et al.,** | § | **CASE NO. 11-11926** |
| | § | |
| Debtors. | § | **Joint Administration Request Pending** |
| | § | |

**INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON AN INTERIM BASIS AND TO GRANT SENIOR LIENS, JUNIOR LIENS AND SUPER PRIORITY ADMINISTRATIVE EXPENSE STATUS; AND (II) AUTHORIZING USE OF CASH COLLATERAL FROM CONTRACTS BONDED BY LIBERTY MUTUAL INSURANCE COMPANY AND/OR SAFECO INSURANCE COMPANY AND PROVIDING ADEQUATE PROTECTION AND (III) OTHER RELIEF**

COMES NOW before the Court, JCE Delaware, Inc., J.C. Evans Construction Holdings, Inc., a Texas Corporation, J.C. Evans Construction Co., LP, J.C. Evans Nevada LLC, Equus Development, Inc. and Adkins Land Development, LP, the above captioned debtors and debtors-in-possession (collectively, "**J.C. Evans**" or the "**Debtors**"),[1] pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1), of Title of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001(c) and 9014 of the Federal

---

[1] The Chapter 11 cases of each Debtor listed herein shall collectively be referred to as the "Chapter 11 Cases," and each a "Chapter 11 Case." The bankruptcy estate of each Debtor is referred to collectively as "Estates" and each an "Estate."

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of this order ("**Interim Order**") authorizing Debtors:

(a) to use cash collateral on an interim basis received from Safeco contracts for which Safeco issued surety bonds which funds shall be held by Liberty Mutual Insurance Company of America and/or Safeco Insurance Company ("**Safeco**") in a segregated account (the "**J.C. Evans Bonded Receivables Account**") under an approved interim budget with adequate protection therefore;

(b) to obtain interim post-petition financing from Safeco in an amount up to $2,500,000 for a period not to exceed 4 weeks after the Petition Date, hereinafter defined, pursuant to an approved interim budget;

(c) to secure the post petition DIP loan funds advanced by Safeco, to grant Safeco, pursuant to Bankruptcy Code §§ 364(c)(2) and (3) and 364(d), liens on and security interests in all of Debtors' currently owned and after acquired real and personal property to secure Debtors' obligations to Safeco as provided for herein;

(d) to secure the post petition DIP loan funds advanced by Safeco, to grant Safeco, pursuant to Bankruptcy Code § 364(c)(1), with respect to the property and assets of the Debtor, an administrative super-priority claim as provided for herein;

(e) to use cash collateral upon which First State Bank of Central Texas ("**First State Bank**") claims a first priority security and to grant replacement liens, as adequate protection, to First State Bank for the diminution in value of such cash collateral in the same validity, priority and extent to which First State Bank liens possessed pre-petition;

and due and sufficient notice of this Motion having been given under Rule 4001(c) and the circumstances; and upon the entire record and arguments of counsel; and this Court having found good and sufficient cause on an interim basis appearing therefore:

**IT APPEARS THAT:**

1.      Pursuant to Rule 4001(c), the Debtors have provided adequate notice of the Motion and opportunity to object to the entry of this Interim Order to: (i) the United States Trustee for the Western District of Texas; (ii) all parties with asserted secured claims against the property of the estates; (iii) the Debtors' 20 Largest Unsecured Creditors; (iv) all parties appearing in these Chapter 11 Cases and requesting notice; (v) any other parties entitled to notice under Rule 4001(b).  The foregoing notice is adequate and sufficient in light of the emergency nature of the relief requested.

2.      On August 1, 2011, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "**Petition Date**"), and from and after that date the Debtor has managed its property and operated its business as a debtor-in-possession pursuant to the provisions of §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

3.      This Court has jurisdiction over this Chapter 11 case and this motion ("**Motion**") pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

4.      The description of the Debtors and their business is set forth in the Declaration of Blake Kuhlman filed herein, to which reference is made.

5.      The Debtor's principal creditors include: (a) Safeco, for claims for pre-petition payments made to or on behalf of the Debtors in connection with Safeco Bonded Contracts and

for pre-petition secured loans for which it claims a security interest in all assets of the Debtors, (b) unsecured trade creditors, including creditors on contracts for which there are no surety bonds ("**Non-bonded Contracts**"), and (c) First State Bank, which claims a first priority secured interest in virtually all of the assets of the Debtor, with the exception of the Safeco Bonded Contracts.

6.    The Debtors, together with Blake A. Kuhlman and Rosemary Kuhlman (collectively, "**Indemnitors**"), executed that certain General Agreement of Indemnity for Contractors dated May 23, 2006, and that certain Agreement of Indemnity for Specific Bonds dated October 13, 2009, (collectively, "**Indemnity Agreements**") in favor of Safeco and their affiliates upon which Safeco relied in issuing various surety bonds to or on behalf of Debtors.

7.    Thereafter, and in reliance upon the execution of the Indemnity Agreements, Safeco issued certain written bonds (the "**Bonds**") all at the request of Indemnitors.

8.    The Debtors were faced with a difficult financial situation due to overextension of Debtors' financial resources.  Debtors defaulted with reference to some or all of the Bonds, in that, among other things, Debtors failed to pay when due certain of its obligations to subcontractors and/or suppliers for labor, materials, equipment rental, supplies and other charges incurred by Debtors in performing the work on the Safeco Bonded Projects.  Moreover, Debtors were unable to meet its financial obligations as they became due.  Debtors required and requested immediate assistance from Safeco to meet Debtors' subcontractor and vendor obligations, without which Debtors would have been unable to satisfy its obligations on the Safeco Bonded Projects.

9.    During the prepetition period, Safeco agreed to make loans to the Debtors, as evidenced by (i) that Certain Memorandum of Understanding dated February 18, 2011 (the

"**Memorandum of Understanding**"); (ii) that certain Demand Note dated as of February 24, 2011 by Debtors for the benefit of Safeco (the "**Safeco Note**"); and (iii) such other notes, advances or agreements as Debtors may from time to time execute (collectively, the "**Safeco Loan Documents**").  A copy of the Memorandum of Understanding without exhibits is attached as *Exhibit A*.

10.     Prior to the petition date, to induce Safeco to make loans provided for in the Safeco Note and as described in the Memorandum of Understanding, and to otherwise secure the Debtors' obligation under the Safeco Note and the Indemnity Agreements, Debtors agreed to grant a security interests in the real and personal property described in the Memorandum of Understanding ("**Safeco Collateral**") to guarantee the payment and satisfaction of Debtors' obligations and to execute and deliver a security agreement, deeds of trust and other security documents (the "**Safeco Security Documents**").

11.     Prior to the Petition Date, due to Debtors' inability to meet payment and payroll obligations on the Safeco Bonded Contracts, Safeco advanced in excess of $22 million under the Safeco Note to support the Debtor's operations and efforts to complete the Safeco Bonded Contracts.

12.     Safeco issued performance and payment bonds for the executory contracts securing the performance of the work by Debtors and the payment of parties supplying labor and materials to Debtors for the contract work and from which it is anticipated that there are receivables that may be due the Debtors ("**Safeco Bonded Receivables**").  A list of the current Bonds and the contracts for which those Bonds were issued ("**Safeco Bonded Contracts"**) for which Safeco Bonded Receivables are due is set forth in *Exhibit B*.

13.     The Debtors are proposing to continue the work on the Safeco Bonded Contracts and may elect to assume the Safeco Bonded Contracts within the meaning of §365 of the Bankruptcy Code.

14.     If no objection is filed by the Debtors within 15 days after the entry of this Order, as further provided herein, the Debtors stipulate and agree that Safeco duly perfected its security interest in and liens on the Safeco Collateral by filing the deeds of trust and financing statements and has valid, perfected, enforceable and non-avoidable liens and security interest in the Safeco Collateral as described in the security documents.

15.     As of the Petition Date, Safeco asserts that the Debtors are in default under the terms of the Indemnity Agreements and that Safeco, in additional to its equitable right of subrogation, has a security interest and lien on the cash proceeds of the Safeco Bonded Contracts, specifically, the Safeco Bonded Receivables, which cash proceeds constitutes its cash collateral ("**Safeco Cash Collateral**") within the meaning of Bankruptcy Code §§ 361 and 363.

16.     Safeco, by virtue of its equitable right of subrogation as a surety and under applicable non-bankruptcy law, and by virtue of its standing, asserts a superior interest in the Safeco Bonded Receivables relating to the Safeco Bonded Contracts.

17.     Safeco objects to the use of Safeco Bonded Receivables from the contracts unless there are conditions placed upon the use of those funds that will provide adequate protection of the asserted interest of Safeco in the contract consideration held and to be paid for performance of the bonded contracts.

18.     First State Bank claims a security interest in virtually all assets of the Debtors ("**FSB Collateral**").   The FSB Collateral allegedly includes receivables from Non-bonded

Contracts, which may constitute cash collateral ("**FSB Cash Collateral**") within the meaning of Bankruptcy Code §§ 361 and 363.

19.     In addition to the use of the Safeco Cash Collateral and the FSB Cash Collateral, an immediate need exists for Debtors to obtain funds in order to continue operations and to administer and preserve the value of the respective bankruptcy estates.  The ability of Debtors to finance its operations, to preserve and maintain the value of its assets requires the availability of working capital under the terms and conditions described in the Safeco Loan Documents and this Interim Order.  In the absence of the availability of such funds, the continued operation of Debtors' business would not be possible, and immediate and irreparable harm to Debtors and the respective bankruptcy Estates would occur.

20.     Safeco and Debtors have reached terms by which Safeco will agree to continue limited financial support until September 1, 2011, by providing a Debtor in Possession Loan of up to $2,500,000 subject to the terms in the Memorandum of Understanding, the Safeco Loan Documents and the renewal and extension of the Safeco Note to evidence the additional sums to be advanced by Safeco, all as supplemented by the terms of this Interim Order (the "**DIP Financing**").  With respect to prepetition loans or advances made pursuant to the Safeco Loan Documents, nothing in this Order affects or modifies the terms thereof.

21.     Debtors have represented they are unable to sustain operations solely with the use of cash collateral or to obtain unsecured credit conditioned solely upon an allowable administrative expense claim under Bankruptcy Code § 503(b)(1).  Financing on a post-petition basis is not available without Debtors granting, pursuant to Bankruptcy Code § 364(c)(1), claims having a priority over any administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b), 507(b), and 546(c), and securing such indebtedness and obligations with the security

interests in and the liens upon the property described below pursuant to Bankruptcy Code §§ 364(c) and (d) as provided herein.

22.     Given the current financial condition of Debtors, Safeco is not willing to extend post-petition financial accommodations unless Debtors grant Safeco perfected liens upon assets of the Estates with the priorities set forth herein.

23.     As set forth in the Motion, approval of this DIP Financing is essential for the Debtors' continued operations and is the best financing available to the Debtors during the interim period.  The proposed DIP Financing is in the best interests of Debtors, the Estates, and creditors and constitutes good business judgment on the part of Debtors.  The DIP Financing will minimize disruption of Debtors' business as a going concern, enable Debtors to preserve and maintain its assets, and increase the possibility of a successful reorganization.  Accordingly, good cause exists for approval of the Motion and entry of this Interim Order.  The terms of the DIP Financing, the granting of liens and superpriority administrative expense claim status are fair and equitable under the circumstances.

24.     Safeco and Debtors have entered into arms length negotiations, have negotiated in good faith in reaching the terms set forth in this Interim Order.  Any advance by Safeco under this Interim Order shall be deemed to have been extended in good faith as that term is defined in § 364(e) of the Bankruptcy Code and is entitled to the protections contained therein.

25.     Sufficient and adequate notice of the hearing and the relief requested in the Motion has been given under the circumstances and in accordance with §§ 102(l); 364(c), and 364(d) and Bankruptcy Rules 2002 and 4001(c).

26.     The Court finds that entry of this Interim Order, and its immediate effectiveness, is in the best interests of the Debtors, the Estates, creditors, and parties in interest because it will

enable Debtors to continue to operate, enhance the prospect for the Debtors' reorganization and increase the likelihood that for those contracts the Debtors must reject or abandon, an orderly transition from those contracts will occur.

Based on the foregoing findings of fact and there appearing good and sufficient cause:

**IT IS HEREBY ORDERED THAT:**

A.    <u>Motion Granted and Interim Relief</u>.  The relief sought in the Motion is granted, subject to the terms set forth in this Interim Order.  All objections to the Interim Order not withdrawn are overruled on their merits.  This Interim Order shall take effect immediately upon entry by the Court and shall remain in effect through and including the date of a hearing for a Final Order.

B.    <u>Use of Cash Collateral and Bonded Receivables Account</u>.  Debtors are authorized to use collections of Safeco Cash Collateral in the ordinary course of business under the terms and conditions set forth in this paragraph.  Safeco shall continue to maintain a separate account which shall be known as the "J.C. Evans Bonded Receivables Account."  The funds deposited into the account shall consist of all existing prepetition funds on deposit therein as of the Petition Date, and all post petition collections on Safeco Bonded Receivables on contracts for which Safeco issued Bonds (extras, claims, progress payments, retained funds).  Funds deposited in this account will be timely disbursed by Safeco to the Debtor pursuant to the Interim Budget attached hereto.  In connection therewith the Debtor shall provide to Safeco checks payable per the approved budget drawn on the Bonded Receivables Account, and Safeco shall sign and return the checks either to the named payee or the Debtor for the budgeted purposes.  Such distributions will be applied in the priorities set forth below:

(a)    <u>First</u>, funds received through each payment from a project or contract will be disbursed to satisfy post petition work, accounts payable and other direct job costs on Safeco Bonded Project[2]; and

(b)    <u>Second,</u> funds received will be applied to cover the ratable portion of Debtor's post petition operating, payroll and administrative expenses incurred on projects bonded by Safeco that are not direct costs covered in the First Priority, as provided in the attached Interim Budget.

C.    The Safeco Cash Collateral and FSB Cash Collateral will be used for the payment of any cost and expenses, set forth in the budgets attached hereto as *Exhibit C* (the "**Interim Budget**").  Debtors shall supply Safeco and First State Bank with budgets every two weeks beginning August 15, 2011.  (In regard to First State Bank, Debtors will endeavor to supply a more detailed budget as soon as practicable.)  For each of the contracts bonded by Safeco as identified in the Interim Budget, Debtors shall provide a breakdown of the cash requirements for completion of the work.  To the extent the Interim Budget contemplates payment of prepetition job costs or other charges, Safeco shall use the prepetition collected funds in the Bonded Receivables Account to make such payments to the extent required under its bonding obligations or in its discretion.  Nothing herein limits the claims for losses, if any, on Safeco Bonded Contracts, including any accrual of damages for future losses on the Safeco Bonded Contracts or the applicability of any relationship-back doctrine under applicable non-bankruptcy law.

D.    <u>Adequate Protection for Use of Cash Collateral</u>.  As adequate protection for (i) the use of the Safeco Cash Collateral, in addition to all equitable subrogation and other rights under applicable non-bankruptcy law and (ii) use of the FSB Cash Collateral, Safeco and First State Bank shall be granted valid, binding, enforceable and automatically perfected replacement liens on and security interests in the same types and items of Debtors' property acquired or arising

---

2    "Direct job costs" refers to payments to subcontractors and suppliers and generally to the costs of labor and materials required for the prosecution of the work at the site of the project(s), and does not refer in any way to the Debtor's overhead costs and payroll.  .

post-petition in which Safeco and First State Bank held a valid, enforceable, and properly perfected lien pre-petition (the "**Replacement Liens**"), but such Replacement Liens shall only be effective to the same extent, validity, and priority as the respective lien held by Safeco and First State Bank as of the Petition Date, and will secure the same respective obligations as are secured by the pre-petition liens, but only to the extent of any post petition diminution in value of Safeco's or First State Bank's collateral position. Moreover, such Replacement Liens shall not attach to any cause of action, or recoveries from such cause of action, that may arise pursuant to Chapter 5 of the Bankruptcy Code.

E.     <u>Other DIP Accounts</u>.     As additional adequate protection, all proceeds from receivables from the quarry owned by Debtors shall be placed into a segregated Debtor-in-Possession account to be used to pay the post petition costs of the Debtors' operations and bankruptcy.

F.     <u>Authorization of Post-Petition DIP Financing</u>.     Debtors are authorized and directed to enter into and perform its obligations in accordance with the terms and conditions of the DIP Financing and the Safeco Loan Documents and to execute and deliver to Safeco and First State Bank such additional documents, instruments, and agreements as may be reasonably required by Safeco to implement the terms, or effectuate the purposes of this Interim Order or any Safeco Loan Document that in their judgment are in the best interests of the Debtors' estates. The use of DIP Financing and income from non-bonded jobs, quarry operations and other sources for the non-bonded payables and other general administrative expenses shall be made strictly in compliance with the Interim Budget and shall be placed in a segregated Debtor-in-Possession account. DIP Financing Advances shall be made only to the extent that other sources

of funds available to the Debtors are then insufficient to make timely payments for budgeted expenses.

      G.    <u>Advances of the DIP Financing</u>.  Debtors are authorized, on an interim basis, to request and receive advances ("**Advances**") from Safeco of up to $2,500,000 as a Debtor in Possession loan on the terms and conditions of the Safeco Loan Documents, as they may be restated or amended. Such Advances shall bear interest at the annual rate of 7%.  However, such funds are not trust funds and are Debtor in Possession loan proceeds pursuant to the Bankruptcy Code.  Debtors are authorized and directed to use the Advances for the purposes allowed under the approved Interim Budget and this Interim Order.  Debtors' interim authority to request and receive Advances shall expire on September 1, 2011 to obtain DIP Financing unless extended by Court order.

      H.    <u>DIP Superpriority Claim</u>.  In the event that Debtors fail to reimburse Safeco for any of the Advances under the DIP Financing, Safeco shall be allowed to the extent of any such unpaid obligations or losses, in accordance with Bankruptcy Code §§ 364(c)(1) and 507(b), claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) and 546 and shall at all times be senior to the rights of Debtors, any successor trustee to the extent permitted by law, or any other unsecured creditor in the Chapter 11 Cases or any subsequent proceeding under the Bankruptcy Code unless otherwise provided herein.  No cost or expense of administration under the Bankruptcy Code §§ 105, 364(c)(1), 503(b), 507(b) or otherwise, shall be senior to, equal to or *pari passu* with, the super-priority claim allowed Safeco herein.

I.     Professional Fee Carve out.  Notwithstanding anything else in this Order, the Cash Collateral available to the Debtors shall in the first instance, and the DIP Financing Advances shall in the second instance fund a professional fee carve-out for the Debtors' professionals in the amount of $150,000 (which sum is in addition to monthly budgeted amounts for such fees) and the carve out shall not be subject or subordinate to the superpriority claims, DIP Financing liens or any other security or priority granted herein or otherwise held by Safeco or FSB.  The carveout shall be funded one-half currently and the remainder by September 1.

J.     DIP Liens. In addition to the security provided in paragraph E and the priority granted to Safeco in paragraph H above, and the rights established under the Indemnity Agreements and Safeco Security Documents, Safeco shall receive the following liens as additional security for Advances under the DIP Financing:

> (a)     pursuant to §364(c)(2), Safeco is hereby granted a first priority security interest in and lien against all unencumbered property of the Debtors' Estates, including, but not limited to, accounts receivables, real and personal property, and any products or proceeds therefrom;

> (b)     pursuant to §364(c)(3), Safeco is hereby granted a junior security interest in and lien against all encumbered property of the Debtors' Estates, including, but not limited to, accounts receivables, real and personal property, and any products or proceeds therefrom, subject only to valid, perfected higher priority security interests which this Court may later determine; notwithstanding the foregoing, no lien is to be granted against equipment which is the subject of a true lease, and all parties reserve their rights to seek a determination of whether a transaction is a lease or financing; and

> (c)     pursuant to section 364(d), Safeco is hereby granted a first priority lien, in *pari passu* with First State Bank, against all property of the Debtors' Estates as to which First State Bank asserts a first priority security interest. For avoidance of doubt, the *pari passu* interest shall not extend to the equipment owned or leased by the Debtors.

K.     Perfection of Liens.  The liens granted to Safeco and First State Bank pursuant to this Interim Order and the Safeco Loan Documents shall be perfected by operation of law upon the execution of this Interim Order by the Court.  Neither First State Bank  nor Safeco shall be

required to file or record any financing statements, deeds of trust, mortgages, notice of lien or other documents in any jurisdiction, to give any notices to, to receive acknowledgments or consents from any person, or to take any other action to validate or perfect the liens granted hereunder. This Interim Order shall be deemed sufficient and conclusive of the validity and perfection of the liens granted hereunder. If First State Bank or Safeco shall, in its sole discretion, choose to file financing statements, deeds of trust, notice of lien or other documents, or otherwise confirm perfection of such liens, First State Bank and Safeco are authorized to effect such filings and recordations, and all such financing statements, deeds of trust, mortgages, and similar documents shall be deemed to have been filed, recorded or made on the date hereof.

L.     <u>Disposition of Collateral</u>.  Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Safeco or FSB Collateral except as otherwise provided in this Interim Order, the Safeco Loan Document or the Memorandum of Understanding unless approved by this Court, after notice and a hearing.

M.     <u>Events of Default:  No Notice Required</u>.  The occurrence of any of the following shall constitute an Event of Default under this Interim Order and the Safeco Loan Documents: provided that the default is not caused by Safeco and that Safeco is otherwise in compliance with this order, (i) an obligee obtains an order lifting the automatic stay and terminating any Safeco Bonded contract or contracts with Debtors, (ii) Debtors obtain an order rejecting any Safeco Bonded contract or contracts without Safeco's consent, (iii) the conversion of any pending Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or the dismissal of any Chapter 11 Case under § 1112 of the Bankruptcy Code; (iv) the appointment of a trustee or examiner in any Chapter 11 Case under §1104 of the Bankruptcy Code.  For any Event of Default under this paragraph;

(a)     If the default is as to any specific Safeco Bonded Contract, any right of Debtors to use the Safeco Cash Collateral from the Safeco Bonded Receivables for such contract is extinguished and terminated upon occurrence of the Event of Default, and Safeco is authorized to use the post petition Safeco Bonded Receivables from such terminated or rejected bonded contract to cure any post petition defaults by Debtors under the terms of such contract;

(b)     If the default is as a result of the conversion, dismissal or appointment of a trustee or examiner, any right of Debtors to use the Safeco Cash Collateral from the Safeco Bonded Receivables for such contract is extinguished and terminated upon occurrence of the Event of Default, and Safeco can take control of all or any post petition Safeco Bonded Receivables attributable to work on the Safeco Bonded Contracts that occurred during the period in which the Debtors were allowed to use the Safeco Cash Collateral, such funds to be payable first to the Debtor to the extent of shortfall in the Debtor's accrued (through the date of termination) but unpaid post petition budgeted job costs on Safeco Bonded Contracts, payroll expenses and U.S. Trustee fees exclusively to pay such accrued budgeted expenses, second to Safeco to use in paying post petition bonded obligations on and completing the Safeco Bonded Contracts; and

(c)     Safeco and First State Bank each retain the right to seek further relief from the Court, including, but not limited to, terminating the Debtors' use of the Safeco Bonded Receivables and requesting other forms of adequate protection in the event that Debtors default in the performance of the Safeco Bonded Contracts or fail to pay parties supplying labor and materials required for the completion of the contracts.

N.     <u>Events of Default: Notice Required</u>.  The occurrence of any of the following shall constitute an Event of Default under this Interim Order and the Safeco Loan Documents: provided that the default is not caused by Safeco and that Safeco is otherwise in compliance with this order: (i) Debtors become unable to pay all of their administrative and other reorganization expenses and claims as they become due and payable; (ii) Debtors have failed to make the payments required under the terms of this Interim Order and (iii) for any Safeco Bonded Contract, the Debtors are unable in the future to make disbursements as required under the terms of the approved budget for costs on such contract, (iv) the failure to comply with any material term or condition of this Interim Order, the Safeco Loan Documents and the Memorandum of Understanding, including but not limited to, a material departure from the Interim Budget; (v) a

declaration of default by an obligee on a Safeco Bonded Contract for which the Debtors fail to provide adequate assurance of future performance and cure the default, (vi) if Safeco determines that Debtors are failing to make adequate progress in completing or otherwise arranging for the disposition of the Safeco Bonded Contracts. Likewise First State Bank may declare an event of default if Debtors meet the tests in (i) (ii) or (iv) above; moreover, it is also an event of default as to First State Bank if Debtors exceed their budgeted gross expenses by more than five percent (5%) on the quarry or non-bonded jobs. In the event of a default by Debtors under this paragraph, Safeco or First State Bank as the case may be shall provide notice of the default ("**Notice**") to the Debtors and file the Notice with the Court and serve it as required by the applicable rules. If no party files an objection within five (5) days of the filing of the Notice by Safeco, the automatic stay shall terminate without further order of the Court and Safeco can take control of all or any Safeco Bonded Receivables attributable to work on the Safeco Bonded Contracts that occurred prior to termination of the automatic stay, such funds to be payable first to the Debtor to the extent of shortfall in the Debtor's accrued (through the date of termination) but unpaid post petition budgeted job costs on Safeco Bonded Contracts, payroll expenses and U.S. Trustee fees exclusively to pay such accrued budgeted expenses, second to Safeco to use in paying post petition bonded obligations on and completing the Safeco Bonded Contracts

O. <u>Right to Take Control of Bonded Contracts</u>: With respect to any Safeco Bonded Contract, Safeco may issue, in its discretion, a letter terminating the Debtors rights to proceed with the contract; and the Debtors shall thereafter immediately file a motion to reject any such contract, which shall be heard on an expedited basis. If a party files an objection to the Notice, the objection shall be set for hearing on an expedited basis and the automatic stay shall remain in place pending further order of the Court. Moreover, if a party to a payment or performance bond

gives a notice of default to the Debtor, the automatic stay shall not prohibit Safeco from performing any of its obligations to third parties under any payment or performance bond on a Safeco Bonded Contract regardless of whether the contract has been rejected by the Debtors.

P.    No Increase in Bond Liability:  Nothing in this Order or in Safeco's role as DIP lender or its agreement to allow use of its Cash Collateral shall in any manner increase the penal amount of any payment of performance bond issued on the Safeco Bonded Contracts.

Q.    Confirmation of Validity of Safeco's and First State Bank's Prepetition Liens. The Debtors, as Debtors-in-possession, shall have 15 days from the entry of this Order to review the validity and perfection of the pre-petition liens of Safeco under the Safeco Loan Documents and Memorandum of Understanding.  Similarly Debtors shall have 15 days from entry of this Order to review and confirm the validity and perfection of the prepetition liens of First State Bank.  In both cases, if no objection is filed thereto by the Debtors in the 15 day review period, the Debtors are deemed to have stipulated that such liens constitute valid, perfected, enforceable and otherwise non-avoidable liens and security interests in the Safeco Collateral and/or the First State Bank Collateral as applicable.  All other creditors shall have 30 days from the date of the entry of this Interim Order ("**Objection Period**") to file and serve any objection or challenge the validity in all respects of Safeco's pre-petition liens on the Safeco Collateral and likewise on the liens of First State Bank.  If no objection or challenge is timely filed and served upon the Debtors and Safeco within the Objection Period or First State Bank as the case may be, Safeco's prepetition security interests and liens in and against the Safeco Collateral will be established without further order of this Court; likewise for First State Bank.

R.    Expenses of Safeco.  As provided in the Safeco Loan Documents, Debtors shall pay all reasonable out-of-pocket post petition costs and expense, including legal fees of Safeco's

counsel, incurred by Safeco in connection with these Bankruptcy Cases and the DIP Financing prior to the termination of the use of the Safeco Cash Collateral. Payment of such fees shall not be subject to allowance by this Court and Safeco shall not be required to comply with U.S. Trustee fee guidelines.

S.    Role of Safeco.  In making decisions to make Advances or issue bonds under this Interim Order or to collect indebtedness and obligations of Debtors or to exercise any other rights under this Interim Order or otherwise, Safeco shall not be deemed to be in control of the operations of Debtors, nor to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of Debtors.

T.    Good faith.  Safeco is extending financial credit to Debtors and the liens, priorities and rights granted under this Interim Order are subject to the protection of Bankruptcy Code Section 364(e).

U.    Documentation.  Debtors shall give Safeco and First State Bank reasonable access to examine and copy the Debtors' books and records, including, without limitation, accounts receivable aging reports, accounts payable aging reports, general ledger, and the maintenance records of any equipment, Safeco Collateral or FSB Collateral.  Safeco shall account to the Debtors for all post petition collections and disbursements from the Bonded Receivables Account.

V.    Insurance.  The Debtors shall maintain insurance in effect on its assets during the term of this Order.

W.    Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of an order (i) confirming any chapter 11 plan in the Chapter 11 Cases,

(ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code;

(iii) to the extent authorized buy applicable law, dismissing any of the Chapter 11 Cases.

X.    <u>Inconsistency</u>.    In the event of any inconsistency between the terms and conditions of the Safeco Loan Documents, the Memorandum of Understanding and this Interim Order, the provisions of this Interim Order shall control.

Y.    <u>Waiver of Any Applicable Stay</u>.    The stay under Rule 6004(h) is hereby waived and this Interim Order shall be effective immediately upon entry.

Z.    <u>Final Hearing</u>.    The final hearing to consider entry of the Final DIP Financing Order is scheduled for September 1, 2011 at 10:30 o'clock a.m. in this Court.    Debtors are responsible for notice.

# # #

**APPROVED AS TO FORM AND SUBSTANCE:**


**COX SMITH MATTHEWS INCORPORATED**

_____
    Mark E. Andrews
    State Bar No. 01253520
    George H. Tarpley
    State Bar No. 19648000
    Stephen K. Lecholop II
    State Bar No. 24070119
    1201 Elm Street, Suite 3300
    Dallas, Texas  75270
    (214) 698-7800
    (214) 698-7899 (Fax)

**PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION**


and

**STRASBURGER & PRICE, LLP**

_____
Christopher R. Ward (SBN 24008233)
Robert P. Franke (SBN 07371200)
Duncan L. Clore (SBN 04404500)

STRASBURGER & PRICE, LLP
901 Main Street, Ste. 4400
Dallas, Texas 75202
(214) 651 4300 / Fax (214) 651 4330
christopher.ward@strasburger.com
robert.franke@starsburger.com
duncan.clore@strasburger.com

Duane J. Brescia (SBN 24025265)
STRASBURGER & PRICE, LLP
600 Congress Ave., Suite 1600
Austin, Texas 78701
(512) 499-3600/ Fax: (512) 499-3660
duane.brescia@strasburger.com


ATTORNEYS FOR LIBERTY MUTUAL INSURANCE COMPANY AND
SAFECO INSURANCE COMPANY

# EXHIBIT "A"

**See Docket #40**

# EXHIBIT "B"

**See Docket #39**

# EXHIBIT "C"

# See Docket #41

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11 CASE** |
| | § | |
| **JCE DELAWARE, INC., et al.,** | § | **CASE NO. 11-11926** |
| | § | |
| **Debtors.** | § | **Joint Administration Request Pending** |
| | § | |

**INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION
FINANCING ON AN INTERIM BASIS AND TO GRANT SENIOR LIENS, JUNIOR
LIENS AND SUPER PRIORITY ADMINISTRATIVE EXPENSE STATUS; AND (II)
AUTHORIZING USE OF CASH COLLATERAL FROM CONTRACTS BONDED BY
LIBERTY MUTUAL INSURANCE COMPANY AND/OR SAFECO INSURANCE
COMPANY AND PROVIDING ADEQUATE PROTECTION AND (III) OTHER RELIEF**

COMES NOW before the Court, JCE Delaware, Inc., J.C. Evans Construction Holdings,

Inc., a Texas Corporation, J.C. Evans Construction Co., LP, J.C. Evans Nevada LLC, Equus

Development, Inc. and Adkins Land Development, LP, the above captioned debtors and debtors-

in-possession (collectively, "**J.C. Evans**" or the "**Debtors**"),[1] pursuant to §§ 105, 361, 362, 363,

364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1), of Title of the United States Code, 11 U.S.C. §§

101, *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001(c) and 9014 of the Federal

---

[1] The Chapter 11 cases of each Debtor listed herein shall collectively be referred to as the "Chapter 11 Cases,"
and each a "Chapter 11 Case." The bankruptcy estate of each Debtor is referred to collectively as "Estates"
and each an "Estate."

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of this order ("**Interim Order**") authorizing Debtors:

(a) to use cash collateral on an interim basis received from Safeco contracts for which Safeco issued surety bonds which funds shall be held by Liberty Mutual Insurance Company of America and/or Safeco Insurance Company ("**Safeco**") in a segregated account (the "**J.C. Evans Bonded Receivables Account**") under an approved interim budget with adequate protection therefore;

(b) to obtain interim post-petition financing from Safeco in an amount up to $2,500,000 for a period not to exceed 4 weeks after the Petition Date, hereinafter defined, pursuant to an approved interim budget;

(c) to secure the post petition DIP loan funds advanced by Safeco, to grant Safeco, pursuant to Bankruptcy Code §§ 364(c)(2) and (3) and 364(d), liens on and security interests in all of Debtors' currently owned and after acquired real and personal property to secure Debtors' obligations to Safeco as provided for herein;

(d) to secure the post petition DIP loan funds advanced by Safeco, to grant Safeco, pursuant to Bankruptcy Code § 364(c)(1), with respect to the property and assets of the Debtor, an administrative super-priority claim as provided for herein;

(e) to use cash collateral upon which First State Bank of Central Texas ("**First State Bank**") claims a first priority security and to grant replacement liens, as adequate protection, to First State Bank for the diminution in value of such cash collateral in the same validity, priority and extent to which First State Bank liens possessed pre-petition;

and due and sufficient notice of this Motion having been given under Rule 4001(c) and the circumstances; and upon the entire record and arguments of counsel; and this Court having found good and sufficient cause on an interim basis appearing therefore:

**IT APPEARS THAT:**

1.      Pursuant to Rule 4001(c), the Debtors have provided adequate notice of the Motion and opportunity to object to the entry of this Interim Order to: (i) the United States Trustee for the Western District of Texas; (ii) all parties with asserted secured claims against the property of the estates; (iii) the Debtors' 20 Largest Unsecured Creditors; (iv) all parties appearing in these Chapter 11 Cases and requesting notice; (v) any other parties entitled to notice under Rule 4001(b).  The foregoing notice is adequate and sufficient in light of the emergency nature of the relief requested.

2.      On August 1, 2011, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "**Petition Date**"), and from and after that date the Debtor has managed its property and operated its business as a debtor-in-possession pursuant to the provisions of §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

3.      This Court has jurisdiction over this Chapter 11 case and this motion ("**Motion**") pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

4.      The description of the Debtors and their business is set forth in the Declaration of Blake Kuhlman filed herein, to which reference it is made.

5.      The Debtor's principal creditors include: (a) Safeco, for claims for pre-petition payments made to or on behalf of the Debtors in connection with Safeco Bonded Contracts and

for pre-petition secured loans for which it claims a security interest in all assets of the Debtors, (b) unsecured trade creditors, including creditors on contracts for which there are no surety bonds ("**Non-bonded Contracts**"), and (c) First State Bank, which claims a first priority secured interest in virtually all of the assets of the Debtor, with the exception of the Safeco Bonded Contracts.

6.     The Debtors, together with Blake A. Kuhlman and Rosemary Kuhlman (collectively, "**Indemnitors**"), executed that certain General Agreement of Indemnity for Contractors dated May 23, 2006, and that certain Agreement of Indemnity for Specific Bonds dated October 13, 2009, (collectively, "**Indemnity Agreements**") in favor of Safeco and their affiliates upon which Safeco relied in issuing various surety bonds to or on behalf of Debtors.

7.     Thereafter, and in reliance upon the execution of the Indemnity Agreements, Safeco issued certain written bonds (the "**Bonds**") all at the request of Indemnitors.

8.     The Debtors were faced with a difficult financial situation due to overextension of Debtors' financial resources.  Debtors defaulted with reference to some or all of the Bonds, in that, among other things, Debtors failed to pay when due certain of its obligations to subcontractors and/or suppliers for labor, materials, equipment rental, supplies and other charges incurred by Debtors in performing the work on the Safeco Bonded Projects.  Moreover, Debtors were unable to meet its financial obligations as they became due.  Debtors required and requested immediate assistance from Safeco to meet Debtors' subcontractor and vendor obligations, without which Debtors would have been unable to satisfy its obligations on the Safeco Bonded Projects.

9.     During the prepetition period, Safeco agreed to make loans to the Debtors, as evidenced by (i) that Certain Memorandum of Understanding dated February 18, 2011 (the

"**Memorandum of Understanding**"); (ii) that certain Demand Note dated as of February 24, 2011 by Debtors for the benefit of Safeco (the "**Safeco Note**"); and (iii) such other notes, advances or agreements as Debtors may from time to time execute (collectively, the "**Safeco Loan Documents**").  A copy of the Memorandum of Understanding without exhibits is attached as *Exhibit A*.

10.     Prior to the petition date, to induce Safeco to make loans provided for in the Safeco Note and as described in the Memorandum of Understanding, and to otherwise secure the Debtors' obligation under the Safeco Note and the Indemnity Agreements, Debtors agreed to grant a security interests in the real and personal property described in the Memorandum of Understanding ("**Safeco Collateral**") to guarantee the payment and satisfaction of Debtors' obligations and to execute and deliver a security agreement, deeds of trust and other security documents (the "**Safeco Security Documents**").

11.     Prior to the Petition Date, due to Debtors' inability to meet payment and payroll obligations on the Safeco Bonded Contracts, Safeco advanced in excess of $22 million under the Safeco Note to support the Debtor's operations and efforts to complete the Safeco Bonded Contracts.

12.     Safeco issued performance and payment bonds for the executory contracts securing the performance of the work by Debtors and the payment of parties supplying labor and materials to Debtors for the contract work and from which it is anticipated that there are receivables that may be due the Debtors ("**Safeco Bonded Receivables**").  A list of the current Bonds and the contracts for which those Bonds were issued ("**Safeco Bonded Contracts"**) for which Safeco Bonded Receivables are due is set forth in *Exhibit B*.

13.     The Debtors are proposing to continue the work on the Safeco Bonded Contracts and may elect to assume the Safeco Bonded Contracts within the meaning of §365 of the Bankruptcy Code.

14.     If no objection is filed by the Debtors within 15 days after the entry of this Order, as further provided herein, the Debtors stipulate and agree that Safeco duly perfected its security interest in and liens on the Safeco Collateral by filing the deeds of trust and financing statements and has valid, perfected, enforceable and non-avoidable liens and security interest in the Safeco Collateral as described in the security documents.

15.     As of the Petition Date, Safeco asserts that the Debtors are in default under the terms of the Indemnity Agreements and that Safeco, in additional to its equitable right of subrogation, has a security interest and lien on the cash proceeds of the Safeco Bonded Contracts, specifically, the Safeco Bonded Receivables, which cash proceeds constitutes its cash collateral ("**Safeco Cash Collateral**") within the meaning of Bankruptcy Code §§ 361 and 363.

16.     Safeco, by virtue of its equitable right of subrogation as a surety and under applicable non-bankruptcy law, and by virtue of its standing, asserts a superior interest in the Safeco Bonded Receivables relating to the Safeco Bonded Contracts.

17.     Safeco objects to the use of Safeco Bonded Receivables from the contracts unless there are conditions placed upon the use of those funds that will provide adequate protection of the asserted interest of Safeco in the contract consideration held and to be paid for performance of the bonded contracts.

18.     First State Bank claims a security interest in virtually all assets of the Debtors ("**FSB Collateral**").   The FSB Collateral allegedly includes receivables from Non-bonded

Contracts, which may constitute cash collateral ("**FSB Cash Collateral**") within the meaning of Bankruptcy Code §§ 361 and 363.

19.     In addition to the use of the Safeco Cash Collateral and the FSB Cash Collateral, an immediate need exists for Debtors to obtain funds in order to continue operations and to administer and preserve the value of the respective bankruptcy estates.  The ability of Debtors to finance its operations, to preserve and maintain the value of its assets requires the availability of working capital under the terms and conditions described in the Safeco Loan Documents and this Interim Order.  In the absence of the availability of such funds, the continued operation of Debtors' business would not be possible, and immediate and irreparable harm to Debtors and the respective bankruptcy Estates would occur.

20.     Safeco and Debtors have reached terms by which Safeco will agree to continue limited financial support until September 41, 2011, by providing a Debtor in Possession Loan of up to $2,500,000 subject to the terms in the Memorandum of Understanding, the Safeco Loan Documents and the renewal and extension of the Safeco Note to evidence the additional sums to be advanced by Safeco, all as supplemented by the terms of this Interim Order (the "**DIP Financing**").  With respect to prepetition loans or advances made pursuant to the Safeco Loan Documents, nothing in this Order affects or modifies the terms thereof.

21.     Debtors have represented they are unable to sustain operations solely with the use of cash collateral or to obtain unsecured credit conditioned solely upon an allowable administrative expense claim under Bankruptcy Code § 503(b)(1).  Financing on a post-petition basis is not available without Debtors granting, pursuant to Bankruptcy Code § 364(c)(1), claims having a priority over any administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b), 507(b), and 546(c), and securing such indebtedness and obligations with the security

interests in and the liens upon the property described below pursuant to Bankruptcy Code §§ 364(c) and (d) as provided herein.

22.     Given the current financial condition of Debtors, Safeco is not willing to extend post-petition financial accommodations unless Debtors grant Safeco perfected liens upon assets of the Estates with the priorities set forth herein.

23.     As set forth in the Motion, approval of this DIP Financing is essential for the Debtors' continued operations and is the best financing available to the Debtors during the interim period.  The proposed DIP Financing is in the best interests of Debtors, the Estates, and creditors and constitutes good business judgment on the part of Debtors.  The DIP Financing will minimize disruption of Debtors' business as a going concern, enable Debtors to preserve and maintain its assets, and increase the possibility of a successful reorganization.  Accordingly, good cause exists for approval of the Motion and entry of this Interim Order.  The terms of the DIP Financing, the granting of liens and superpriority administrative expense claim status are fair and equitable under the circumstances.

24.     Safeco and Debtors have entered into arms length negotiations, have negotiated in good faith in reaching the terms set forth in this Interim Order.  Any advance by Safeco under this Interim Order shall be deemed to have been extended in good faith as that term is defined in § 364(e) of the Bankruptcy Code and is entitled to the protections contained therein.

25.     Sufficient and adequate notice of the hearing and the relief requested in the Motion has been given under the circumstances and in accordance with §§ 102(l); 364(c), and 364(d) and Bankruptcy Rules 2002 and 4001(c).

26.     The Court finds that entry of this Interim Order, and its immediate effectiveness, is in the best interests of the Debtors, the Estates, creditors, and parties in interest because it will

enable Debtors to continue to operate, enhance the prospect for the Debtors' reorganization and increase the likelihood that for those contracts the Debtors must reject or abandon, an orderly transition from those contracts will occur.

Based on the foregoing findings of fact and there appearing good and sufficient cause:

**IT IS HEREBY ORDERED THAT:**

A.     <u>Motion Granted and Interim Relief</u>.  The relief sought in the Motion is granted, subject to the terms set forth in this Interim Order.  All objections to the Interim Order not withdrawn are overruled on their merits.  This Interim Order shall take effect immediately upon entry by the Court and shall remain in effect through and including the date of a hearing for a Final Order.

B.     <u>Use of Cash Collateral and Bonded Receivables Account</u>.  Debtors are authorized to use collections of Safeco Cash Collateral in the ordinary course of business under the terms and conditions set forth in this paragraph.  Safeco shall continue to maintain a separate account which shall be known as the "J.C. Evans Bonded Receivables Account."  The funds deposited into the account shall consist of all existing prepetition funds on deposit therein as of the Petition Date, and all post petition collections on Safeco Bonded Receivables on contracts for which Safeco issued Bonds (extras, claims, progress payments, retained funds).  Funds deposited in this account will be timely disbursed by Safeco to the Debtor pursuant to the Interim Budget attached hereto.  In connection therewith the Debtor shall provide to Safeco checks payable per the approved budget drawn on the Bonded Receivables Account, and Safeco shall sign and return the checks either to the named payee or the Debtor for the budgeted purposes.  Such distributions will be applied in the priorities set forth below:

(a)    First, funds received through each payment from a project or contract will be disbursed to satisfy post petition work, accounts payable and other direct job costs on Safeco Bonded Project[2]; and

(b)    Second, funds received will be applied to cover the ratable portion of Debtor's post petition operating, payroll and administrative expenses incurred on projects bonded by Safeco that are not direct costs covered in the First Priority, as provided in the attached Interim Budget.

C.    The Safeco Cash Collateral and FSB Cash Collateral will be used for the payment of any cost and expenses, set forth in the ~~budget~~ budgets attached hereto as *Exhibit C* (the "**Interim Budget**"). Debtors shall supply Safeco and First State Bank with budgets every two weeks beginning August 15, 2011. (In regard to First State Bank, Debtors will endeavor to supply a more detailed budget as soon as practicable.) For each of the contracts bonded by Safeco as identified in the Interim Budget, Debtors shall provide a breakdown of the cash requirements for completion of the work. To the extent the Interim Budget contemplates payment of prepetition job costs or other charges, Safeco shall use the prepetition collected funds in the Bonded Receivables Account to make such payments to the extent required under its bonding obligations or in its discretion. Nothing herein limits the claims for losses, if any, on Safeco Bonded Contracts, including any accrual of damages for future losses on the Safeco Bonded Contracts or the applicability of any relationship-back doctrine under applicable non-bankruptcy law.

D.    Adequate Protection for Use of Cash Collateral. As adequate protection for (i) the use of the Safeco Cash Collateral, in addition to all equitable subrogation and other rights under applicable non-bankruptcy law~~,~~ and (ii) use of the FSB Cash Collateral, Safeco and First State Bank shall be granted valid, binding, enforceable and automatically perfected replacement liens

---

2    "Direct job costs" refers to payments to subcontractors and suppliers and generally to the costs of labor and materials required for the prosecution of the work at the site of the project(s), and does not refer in any way to the Debtor's overhead costs and payroll.  .

on and security interests in the same types and items of Debtors' property acquired or arising post-petition in which Safeco and First State Bank held a valid, enforceable, and properly perfected lien pre-petition (the "**Replacement Liens**"), but such Replacement Liens shall only be effective to the same extent, validity, and priority as the respective lien held by Safeco and First State Bank as of the Petition Date, and will secure the same respective obligations as are secured by the pre-petition liens, but only to the extent of any post petition diminution in value of Safeco's or First State Bank's collateral position. Moreover, such Replacement Liens shall not attach to any cause of action, or recoveries from such cause of action, that may arise pursuant to Chapter 5 of the Bankruptcy Code.

E.     <u>Other DIP Accounts</u>. As additional adequate protection, all proceeds from receivables from the quarry owned by Debtors shall be placed into a segregated Debtor-in-Possession account to be used to pay the post petition costs of the Debtors' operations and bankruptcy.

F.     <u>Authorization of Post-Petition DIP Financing</u>. Debtors are authorized and directed to enter into and perform its obligations in accordance with the terms and conditions of the DIP Financing and the Safeco Loan Documents and to execute and deliver to Safeco <u>and First State Bank</u> such additional documents, instruments, and agreements as may be reasonably required by Safeco to implement the terms, or effectuate the purposes of this Interim Order or any Safeco Loan Document that in their judgment are in the best interests of the Debtors' estates. The use of DIP Financing and income from non-bonded jobs, quarry operations and other sources for the non-bonded payables and other general administrative expenses shall be made strictly in compliance with the Interim Budget and shall be placed in a segregated Debtor-in-Possession account. DIP Financing Advances shall be made only to the extent that other sources

of funds available to the Debtors are then insufficient to make timely payments for budgeted expenses.

G. <u>Advances of the DIP Financing</u>.  Debtors are authorized, on an interim basis, to request and receive advances ("**Advances**") from Safeco of up to $2,500,000 as a Debtor in Possession loan on the terms and conditions of the Safeco Loan Documents, as they may be restated or amended. Such Advances shall bear interest at the annual rate of 7%.  However, such funds are not trust funds and are Debtor in Possession loan proceeds pursuant to the Bankruptcy Code.  Debtors are authorized and directed to use the Advances for the purposes allowed under the approved Interim Budget and this Interim Order.  Debtors' interim authority to request and receive Advances shall expire on September 41, 2011 to obtain DIP Financing unless extended by Court order.

H. <u>DIP Superpriority Claim</u>.  In the event that Debtors fail to reimburse Safeco for any of the Advances under the DIP Financing, Safeco shall be allowed to the extent of any such unpaid obligations or losses, in accordance with Bankruptcy Code §§ 364(c)(1) and 507(b), claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) and 546 and shall at all times be senior to the rights of Debtors, any successor trustee to the extent permitted by law, or any other unsecured creditor in the Chapter 11 Cases or any subsequent proceeding under the Bankruptcy Code unless otherwise provided herein.  No cost or expense of administration under the Bankruptcy Code §§ 105, 364(c)(1), 503(b), 507(b) or otherwise, shall be senior to, equal to or *pari passu* with, the super-priority claim allowed Safeco herein.

I.     Professional Fee Carve out.  Notwithstanding anything else in this Order, the Cash Collateral available to the Debtors shall in the first instance, and the DIP Financing Advances shall in the second instance fund a professional fee carve-out for the Debtors' professionals in the amount of $150,000 (which sum is in addition to monthly budgeted amounts for such fees) and the carve out shall not be subject or subordinate to the superpriority claims, DIP Financing liens or any other security or priority granted herein or otherwise held by Safeco or FSB.  The carveout shall be funded one-half currently and the remainder by September 1.

J.     DIP Liens. In addition to the security provided in paragraph E and the priority granted to Safeco in paragraph H above, and the rights established under the Indemnity Agreements and Safeco Security Documents, Safeco shall receive the following liens as additional security for Advances under the DIP Financing:

(a)     pursuant to §364(c)(2), Safeco is hereby granted a first priority security interest in and lien against all unencumbered property of the Debtors' Estates, including, but not limited to, accounts receivables, real and personal property, and any products or proceeds therefrom;

(b)     pursuant to §364(c)(3), Safeco is hereby granted a junior security interest in and lien against all encumbered property of the Debtors' Estates, including, but not limited to, accounts receivables, real and personal property, and any products or proceeds therefrom, subject only to valid, perfected higher priority security interests which this Court may later determine; notwithstanding the foregoing, no lien is to be granted against equipment which is the subject of a true lease, and all parties reserve their rights to seek a determination of whether a transaction is a lease or financing; and

(c)     pursuant to section 364(d), Safeco is hereby granted a first priority lien, in *pari passu* with First State Bank, against all property of the Debtors' Estates as to which First State Bank asserts a first priority security interest. For avoidance of doubt, the *pari passu* interest shall not extend to the equipment owned or leased by the Debtors.

K.     Perfection of Liens.  The liens granted to Safeco and First State Bank pursuant to this Interim Order and the Safeco Loan Documents shall be perfected by operation of law upon the execution of this Interim Order by the Court.  Neither First State Bank  nor Safeco shall not

be required to file or record any financing statements, deeds of trust, mortgages, notice of lien or other documents in any jurisdiction, to give any notices to, to receive acknowledgments or consents from any person, or to take any other action to validate or perfect the liens granted hereunder. This Interim Order shall be deemed sufficient and conclusive of the validity and perfection of the liens granted hereunder. If First State Bank or Safeco shall, in its sole discretion, choose to file financing statements, deeds of trust, notice of lien or other documents, other or otherwise confirm perfection of such liens, First State Bank and Safeco is are authorized to effect such filings and recordations, and all such financing statements, deeds of trust, mortgages, and similar documents shall be deemed to have been filed, recorded or made on the date hereof.

L.     Disposition of Collateral.  Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Safeco or FSB Collateral except as otherwise provided in this Interim Order, the Safeco Loan Document or the Memorandum of Understanding unless approved by this Court, after notice and a hearing.

M.     Events of Default:  No Notice Required.  The occurrence of any of the following shall constitute an Event of Default under this Interim Order and the Safeco Loan Documents: provided that the default is not caused by Safeco and that Safeco is otherwise in compliance with this order, (i) an obligee obtains an order lifting the automatic stay and terminating any Safeco Bonded contract or contracts with Debtors, (ii) Debtors obtain an order rejecting any Safeco Bonded contract or contracts without Safeco's consent, (iii) the conversion of any pending Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or the dismissal of any Chapter 11 Case under § 1112 of the Bankruptcy Code; (iv) the appointment of a trustee or

examiner in any Chapter 11 Case under §1104 of the Bankruptcy Code.  For any Event of Default under this paragraph;

    (a)    If the default is as to any specific Safeco Bonded Contract, any right of Debtors to use the Safeco Cash Collateral from the Safeco Bonded Receivables for such contract is extinguished and terminated upon occurrence of the Event of Default, and Safeco is authorized to use the post petition Safeco Bonded Receivables from such terminated or rejected bonded contract to cure any post petition defaults by Debtors under the terms of such contract;

    (b)    If the default is as a result of the conversion, dismissal or appointment of a trustee or examiner, any right of Debtors to use the Safeco Cash Collateral from the Safeco Bonded Receivables for such contract is extinguished and terminated upon occurrence of the Event of Default, and Safeco can take control of all or any post petition Safeco Bonded Receivables attributable to work on the Safeco Bonded Contracts that occurred during the period in which the Debtors were allowed to use the Safeco Cash Collateral, such funds to be payable first to the Debtor to the extent of shortfall in the Debtor's accrued (through the date of termination) but unpaid post petition budgeted job costs on Safeco Bonded Contracts, payroll expenses and U.S. Trustee fees exclusively to pay such accrued budgeted expenses, second to Safeco to use in paying post petition bonded obligations on and completing the Safeco Bonded Contracts; and

    (c)    Safeco ~~retains~~ and First State Bank each retain the right to seek further relief from the Court, including, but not limited to, terminating the Debtors' use of the Safeco Bonded Receivables and requesting other forms of adequate protection in the event that Debtors default in the performance of the Safeco Bonded Contracts or fail to pay parties supplying labor and materials required for the completion of the contracts.

    N.    <u>Events of Default:  Notice Required</u>.  The occurrence of any of the following shall constitute an Event of Default under this Interim Order and the Safeco Loan Documents: provided that the default is not caused by Safeco and that Safeco is otherwise in compliance with this order: (i) Debtors become unable to pay all of ~~its~~ their administrative and other reorganization expenses and claims as they become due and payable; (ii) Debtors have failed to make the payments required under the terms of this Interim Order and (iii) for any Safeco Bonded Contract, the Debtors are unable in the future to make disbursements as required under the terms of the approved budget for costs on such contract, (iv) the failure to comply with any

material term or condition of this Interim Order, the Safeco Loan Documents and the Memorandum of Understanding, including but not limited to, a material departure from the Interim Budget; (v) a declaration of default by an obligee on a Safeco Bonded Contract for which the Debtors fail to provide adequate assurance of future performance and cure the default, (vi) if Safeco determines that Debtors are failing to make adequate progress in completing or otherwise arranging for the disposition of the Safeco Bonded Contracts. Likewise First State Bank may declare an event of default if Debtors meet the tests in (i) (ii) or (iv) above; moreover, it is also an event of default as to First State Bank if Debtors exceed their budgeted gross expenses by more than five percent (5%) on the quarry or non-bonded jobs. In the event of a default by Debtors under this paragraph, Safeco or First State Bank as the case may be shall provide notice of the default ("**Notice**") to the Debtors and file the Notice with the Court and serve it as required by the applicable rules. If no party files an objection within five (5) days of the filing of the Notice by Safeco, the automatic stay shall terminate without further order of the Court and Safeco can take control of all or any Safeco Bonded Receivables attributable to work on the Safeco Bonded Contracts that occurred prior to termination of the automatic stay, such funds to be payable first to the Debtor to the extent of shortfall in the Debtor's accrued (through the date of termination) but unpaid post petition budgeted job costs on Safeco Bonded Contracts, payroll expenses and U.S. Trustee fees exclusively to pay such accrued budgeted expenses, second to Safeco to use in paying post petition bonded obligations on and completing the Safeco Bonded Contracts

O.  <u>Right to Take Control of Bonded Contracts</u>: With respect to any Safeco Bonded Contract, Safeco may issue, in its discretion, a letter terminating the Debtors rights to proceed with the contract; and the Debtors shall thereafter immediately file a motion to reject any such

contract, which shall be heard on an expedited basis.  If a party files an objection to the Notice, the objection shall be set for hearing on an expedited basis and the automatic stay shall remain in place pending further order of the Court.  Moreover, if a party to a payment or performance bond gives a notice of default to the Debtor, the automatic stay shall not prohibit Safeco from performing any of its ~~obligation~~ obligations to third parties under any payment or performance bond on a Safeco Bonded Contract regardless of whether the contract has been rejected by the ~~Debtor~~Debtors.

P.       <u>No Increase in Bond Liability</u>:  Nothing in this Order or in Safeco's role as DIP lender or its agreement to allow use of its Cash Collateral shall in any manner increase the penal amount of any payment of performance bond issued on the Safeco Bonded Contracts.

Q.       <u>Confirmation of Validity of Safeco's and First State Bank's Prepetition Liens</u>. The Debtors, as Debtors-in-possession, shall have 15 days from the entry of this Order to review the validity and perfection of the pre-petition liens of Safeco under the Safeco Loan Documents and Memorandum of Understanding.  ~~If~~ Similarly Debtors shall have 15 days from entry of this Order to review and confirm the validity and perfection of the prepetition liens of First State Bank.  In both cases, if no objection ~~if~~ is filed thereto by the Debtors in the 15 day review period, the Debtors are deemed to have stipulated that such liens constitute valid, perfected, enforceable and otherwise non-avoidable liens and security interests in the Safeco Collateral and/or the First State Bank Collateral as applicable.  All other creditors shall have 30 days from the date of the entry of this Interim Order ("**Objection Period**") to file and serve any objection or challenge the validity in all respects of Safeco's pre-petition liens on the Safeco Collateral and likewise on the liens of First State Bank.  If no objection or challenge is timely filed and served upon the Debtors and Safeco within the Objection Period or First State Bank as the case may be, Safeco's

prepetition security interests and liens in and against the Safeco Collateral will be established without further order of this Court; likewise for First State Bank.

R.    <u>Expenses of Safeco</u>.  As provided in the Safeco Loan Documents, Debtors shall pay all reasonable out-of-pocket post petition costs and expense, including legal fees of Safeco's counsel, incurred by Safeco in connection with these Bankruptcy Cases and the DIP Financing prior to the termination of the use of the Safeco Cash Collateral.  Payment of such fees shall not be subject to allowance by this Court and Safeco shall not be required to comply with U.S. Trustee fee guidelines.

S.    <u>Role of Safeco</u>.  In making decisions to make Advances or issue bonds under this Interim Order or to collect indebtedness and obligations of Debtors or to exercise any other rights under this Interim Order or otherwise, Safeco shall not be deemed to be in control of the operations of Debtors, nor to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of Debtors.

T.    <u>Good faith</u>.  Safeco is extending financial credit to Debtors and the liens, priorities and rights granted under this Interim Order are subject to the protection of Bankruptcy Code Section 364(e).

U.    <u>Documentation</u>.  Debtors shall give Safeco and First State Bank reasonable access to examine and copy the Debtors' books and records, including, without limitation, accounts receivable aging reports, accounts payable aging reports, general ledger, and the maintenance records of any equipment, Safeco Collateral or FSB Collateral.  Safeco shall account to the Debtors for all post petition collections and disbursements from the Bonded Receivables Account.

V. Insurance.  The Debtors shall maintain insurance in effect on its assets during the term of this Order.

W. ~~V.~~Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of an order (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (iii) to the extent authorized buy applicable law, dismissing any of the Chapter 11 Cases.

X. ~~W.~~Inconsistency.  In the event of any inconsistency between the terms and conditions of the Safeco Loan Documents, the Memorandum of Understanding and this Interim Order, the provisions of this Interim Order shall control.

Y. ~~X.~~Waiver of Any Applicable Stay.  The stay under Rule 6004(h) is hereby waived and this Interim Order shall be effective immediately upon entry.

Z. ~~Y.~~Final Hearing.  The final hearing to consider entry of the Final DIP Financing Order is scheduled for ~~_____, 2001 at \_\_\_\_~~September 1, 2011 at 10:30 o'clock ~~\_\_.m~~a.m. in this Court.  Debtors are responsible for notice.

# # #

**APPROVED AS TO FORM AND SUBSTANCE:**


**COX SMITH MATTHEWS INCORPORATED**


_____
     Mark E. Andrews
     State Bar No. 01253520
     George H. Tarpley
     State Bar No. 19648000
     Stephen K. Lecholop II
     State Bar No. 24070119
     1201 Elm Street, Suite 3300
     Dallas, Texas  75270
     (214) 698-7800
     (214) 698-7899 (Fax)

**PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**


and

**STRASBURGER & PRICE, LLP**

_____
Christopher R. Ward (SBN 24008233)
Robert P. Franke (SBN 07371200)
Duncan L. Clore (SBN 04404500)

STRASBURGER & PRICE, LLP
901 Main Street, Ste. 4400
Dallas, Texas 75202
(214) 651 4300 / Fax (214) 651 4330
christopher.ward@strasburger.com
robert.franke@starsburger.com
duncan.clore@strasburger.com

Duane J. Brescia (SBN 24025265)
STRASBURGER & PRICE, LLP
600 Congress Ave., Suite 1600
Austin, Texas 78701
(512) 499-3600/ Fax: (512) 499-3660
duane.brescia@strasburger.com


ATTORNEYS FOR LIBERTY MUTUAL INSURANCE COMPANY AND SAFECO INSURANCE COMPANY